## 25736.   TOWNSEND *v.* STATE OF GEORGIA.

Decided November 25, 1936.

*Grady Head, M. L. Harris, Mann & Mann, McClure & McClure, S. P. Hale, O. R. Hardin, D. W. Mitchell, Howell & Post,* for plaintiff in error.

*John C. Mitchell, solicitor-general,* contra.

STEPHENS, J. (After stating the foregoing facts.) Whatever may have been the power of judges at common law to adjudge, as for a contempt of court, any person for an act done or writing published calculated to bring the court or the judge into contempt and lower his authority, the power of the judges in Georgia to punish for a criminal contempt of court is limited by law as provided in the Code, § 24-105, and extends "only to cases of misbehavior of any person or persons in the presence of said courts, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or resistance by any officer of

said courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree, or command of the said courts." Therefore it is essential to its constitution as a contempt of court that an act causing a publication criticizing a judge interferes with or obstructs the administration of justice. The administration of justice consists in the trial of cases in the court, and their judicial determination and disposition by orderly procedure under rules of law, and putting the judgments into effect. There is a distinction between acts which consist of publications, or otherwise, not made in the presence of the court, which merely evince disrespect or contempt for the court or the judge, and acts of such character which interfere with or obstruct the administration of justice. The former acts, where they do not constitute an interference with or an obstruction of the administration of justice, under the limitations prescribed in the Georgia statute, do not constitute contempt of court. Criticisms in newspaper articles which do not obstruct the administration of justice in the court do not constitute contempt of court. In the attachment as amended Mr. Townsend is charged with contempt of court, in that, on the court's announcing a recess of the court, he objected thereto and moved for a mistrial in the case pending; that, being dissatisfied with the court's overruling the motion for mistrial, he called a reporter and began to dictate "his overruled motion in the record;" that, being actuated by "malice and ill will towards the court on account of official conduct and decisions touching certain" named cases pending in the court in which the respondent had appeared as attorney, and being "enraged" without cause at the conduct of the judge in the disposition of the cases, and because the judge adjourned court, the respondent caused the article in question to be published in a newspaper of general circulation in the county, and the article was delivered to and read by the judge of the court at the term of court during the recess of which the article was published, and that the language in the article had a tendency to impede, embarrass, and obstruct the court in the due administration of justice.

Manifestly the conduct of the respondent in objecting, in open court, to a recess of the court, in moving for a mistrial, and in dictating certain matters to a reporter, as referred to in the amendment to the attachment, without more, was not conduct in any

way contemptuous of the court, and did not constitute a contempt of court. The article published contained no reference whatsoever to any specific matter or case pending in the court, and contained nothing by way of criticism of the conduct or the trial of any pending case, or of the judicial disposition of any pending case or matter. The only act of the judge in the discharge of the duties of his office which was in any way referred to or criticized was his adjourning the court. The article neither expressly nor by intimation contained any charges or any matter calculated to influence or intimidate the judge, or any of the officers of the court, or the attendants thereon, and in any manner thereby influence or obstruct the administration of justice. The article merely referred historically to matters pending in the court, and, without any reference specifically to any matters in the court, criticized the conduct of the judge only in so far as he adjourned the court for the purpose of going about his private business to his home in another county for the purpose of casting his vote in a local election, and thus discommoding people and in leaving the business of the court unfinished and undisposed of, and thereby, in the judgment of the writer of the article, effecting a wasteful and an uneconomical administration of the business of the court, and failing to earn his salary. The attachment and the amendment, properly construed, seek to charge the respondent with contempt of court only as respects his conduct in maliciously and with ill will toward the court, as charged, causing the publication in a newspaper of the article complained of, where the published article was afterward delivered to and read by the judge during the term of court. The mere criticism, solely in the interests of an economical discharge of the duties of the office, of the conduct of the trial judge in adjourning court and leaving business unfinished, certainly is in no wise calculated to influence or obstruct the trial of cases in court, or the judicial determination and disposition thereof by orderly procedure under rules of law, or the enforcement of its judgments. Malice or ill will towards the judge, which may have actuated the respondent in writing the article criticizing the conduct of the judge, and causing its publication in the newspaper, did not render the respondent's conduct in causing the article to be published and read by the trial judge an obstruction of the administration of justice. Where this con-

duct itself did not amount to an obstruction of the administration of justice, no malice or ill will toward the judge which may have actuated the respondent could render his conduct an obstruction of the administration of justice.

In re *Fite,* 11 *Ga. App.* 665 (76 S. E. 397), Judge Fite, in a published article in a newspaper, had criticized a decision of the Court of Appeals in a specific case which was still pending in that court, and in so doing had impugned the judicial integrity of the Judges of the Court of Appeals in the rendition of the decision in that case. As stated in the opinion of the Court of Appeals adjudging Judge Fite in contempt, his conduct constituted "a most flagrant contempt of court, abounding in defamatory aspersions and criminal libel against judicial integrity of the Judges." Further in its opinion the court stated: "If the court is scandalized, the integrity of its Judges impeached by gross, defamatory libels of their character and their decisions, the consequences are far more hurtful than in cases of direct contempts committed in their presence; for unfair, unjust, and libelous criticisms of judicial proceedings, and unwarranted attacks reflecting upon the Judges in their judicial capacity, not only tend to endanger the rights of parties in pending cases, but they prevent that calm and dispassionate discussion and investigation of such causes so necessary to their just and proper determination. Pernicious attacks of this character not only impede and embarrass the due administration of law and justice by the courts, but are calculated to inflame public anger, and arouse public prejudice and clamor against the Judges in the performance of their judicial functions." The conduct of Judge Fite, as characterized by the Court of Appeals in publishing the article and thereby impugning the judicial integrity of the Judges in the rendition of the decision in the case referred to, was an obstruction of the administration of justice, for which he was liable for contempt. In the case now before the court the newspaper article published by Mr. Townsend, which it is alleged constituted a contempt of court, had no reference to the conduct of the judge as respects the judicial disposition of any case by the court, and contained nothing impugning the judgment or integrity of the judge, or constituting a criminal libel. The article, as has been already pointed out, was no more than a criticism of the conduct of the judge in adjourning court and going home

to vote, and a characterization of his act in so doing as a wasteful and uneconomical administration of the business of the court. The ruling in the *Fite* case is clearly distinguishable, under the facts, from the case now before the court, and is not authority upon which to predicate a judgment adjudging Mr. Townsend guilty of contempt of court.

While attorneys as officers of the court are under a duty to maintain the integrity and dignity of the court and respect for its authority, for acts committed outside the presence of the court which do not constitute misbehavior as an officer of the court in an official transaction or disobedience or resistance of any lawful writ, etc., of the court, attorneys are no more amenable to attachment and summary punishment for contempt of court than are other persons. Watson *v.* People, 11 Colo. 4 (16 Pac. 329); State *v.* Anderson, 40 Iowa, 207. See cases cited in 17 L. R. A. (N. S.) 572. The conduct of the respondent, who is an attorney and an officer of the court, in merely criticizing the judge for adjourning court and going home and thereby failing faithfully to discharge the duties of his office, constituted no misbehavior by the respondent as an officer of the court in an official transaction, or disobedience or resistance by him of any lawful writ, process, etc., of the court. Mr. Townsend's conduct in publishing the criticism of the judge, in so far as it may be considered as a contempt of court, is measured by the standard applicable to similar conduct of citizens and people generally. Nothing contained in the article and its publication and communication to the judge during the term of the court could in any way obstruct the administration of justice by the court. Since it is essential that the respondent's conduct, when committed outside of the presence of the court, should constitute an obstruction of justice in order to render the respondent guilty of contempt of court, the publication by the respondent of the article in the newspaper, notwithstanding the article was communicated to the judge and was read by him during the term of court, did not constitute a contempt of court. The attachment as amended contained no allegation of fact which showed that the respondent's conduct in causing the article to be published, or his conduct otherwise as set out in the attachment and the amendment, constituted a contempt of court. Therefore the court erred in overruling the general demurrer.

It is unnecessary to pass upon the sufficiency of the evidence adduced on the hearing, except to ascertain whether any defect, by reason of the insufficiency in the allegations in the attachment as amended to show a contempt of court, might possibly be cured and rendered. harmless by evidence supplying such defect, and which, when taken in connection with other evidence adduced, would authorize a finding that the respondent was guilty of contempt. For the purpose of this inquiry it is sufficient to take the evidence as found by the judge in his opinion rendered in support of his judgment finding the respondent guilty of contempt. In this opinion, in addition to his finding relative to the disposition of cases in the court, the declaration of a recess of the court, and his reason therefor, the judge found that the respondent "objected in open court to a recess of the said court, and after an adverse ruling thereon he continued to argue said motion; that he was mad at the time, and while mad wrote the article in question; that his demeanor before the court was partly occasioned by his intemperate use of intoxicants on the night previously; and that the respondent objected to a recess of said court so that the cases of Brown, et al., charged with cattle-stealing, might be discharged on demands, and never tried." None of these facts as thus found by the judge, whether as respects the conduct of the respondent within or without the presence of the court, whether taken separately or in connection with his conduct in causing the publication of the newspaper article complained of, constitute contempt of court. For the reasons already pointed out in this opinion, the conduct of the respondent which occurred outside the court, as found by the judge, did not constitute an obstruction of the administration of justice, and therefore did not constitute contempt of court. None of the matters which transpired in the presence of the court, as found by the judge, with the possible exception of the respondent's conduct in arguing a motion after the judge had passed upon it, could in any way be considered as contempt of court. There was certainly no contempt in the respondent's objection to a declaration of a recess by the court, or in the respondent's being "mad" merely when he made the objection referred to, or in that his demeanor before the court as outlined was actuated in part by the intemperate use of intoxicants the night before. In adjudging the respondent in contempt of court

the judge seemingly did not predicate his judgment on any of the matters which transpired in the presence of the court. They were evidently recited by him as facts tending to show malice and ill will toward the court by the respondent in causing the article in question to be published in the newspaper. The statement by the judge in his opinion, that the respondent argued a motion after the court had ruled on it, is not borne out by the evidence. Therefore the judgment finding the respondent in contempt can not be supported on the finding that the respondent argued a motion after the court had ruled upon it. In making the statement that the respondent had argued a motion after the judge had ruled upon it, the judge was following his recollection of what transpired before him at the term of court referred to in the newspaper article, rather than the evidence adduced before him on the trial of the issue formed by the respondent's answer to the attachment for contempt. Of course the evidence as adduced on the trial is the only legal basis on which the judgment for contempt could be predicated. Taking the evidence as found by the judge on the facts as the basis for his judgment finding the respondent in contempt of court, the evidence is insufficient to show that the respondent's conduct in the presence of the court was such as would authorize the court to adjudge him in contempt, or that his conduct outside of the court in causing the article to be published in the newspaper, or other conduct, constituted an obstruction of the administration of justice. The judgment finding the respondent in contempt of court was without evidence to support it and was contrary to law.

This court recognizes fully the duty resting upon judges to maintain the authority and dignity of their courts, and, by attachment for contempt, to protect themselves and the courts against acts which interfere with and obstruct the administration of justice. While judges are fully empowered, under the law, to maintain the authority and dignity of their courts by summarily punishing for contempt any acts in the nature of criticisms of their judicial conduct which obstruct the administration of justice, judges are not exempt from public criticism of their official acts or conduct. It is only when such criticisms obstruct the administration of justice that they constitute contempt of court. We do not condemn or criticize the judge whose judgment is now under review,

for his act in issuing the attachment for contempt. He had the right to issue the attachment, if, under his conception of his duty, he saw fit to do so. His judgment adjudicating the respondent in contempt of court is however subject to judicial review. In the exercise of the power to review the judgment of the trial judge, vested in it by the constitution of this State, this court concludes that the facts as alleged in the attachment for contempt and the amendment thereto, as well as those recited and found as true by the judge in the opinion accompanying his judgment, do not constitute contempt of court. Therefore the judge erred in overruling the respondent's general demurrer. The subsequent proceedings, which resulted in the judgment for contempt and a sentence therefor, were nugatory.

*Judgment reversed. Jenkins, P. J., concurs. Sutton, J., concurs in the judgment.*